USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___2/1/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

NATIONAL RAILROAD PASSENGER                    :
CORPORATION (AMTRAK),                          :
                                    Plaintiff, :
                                               :
            -against-                          :
                                               :        21-CV-5810 (VEC)
                                               :
78,441 SQUARE FEET MORE OR LESS OF             :
LAND AND IMPROVEMENTS, 260 TWELFTH :             OPINION & ORDER
AVENUE HOLDINGS LLC, AND UNKNOWN :
OTHERS,                                        :
                                               :
                                    Defendants. :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        In advance of the February 12, 2024, trial in this matter, Plaintiff moved, *inter alia*, to

exclude any evidence or argument concerning the value of the condemned property ("Property")

on any date other than the date of taking ("Vesting Date"), and to preclude Marc Nakleh

(Defendants' appraiser) from providing his opinion of the market value of the Property on any

date other than the Vesting Date.  Amtrak MIL, Dkt. 127; Amtrak Nakleh Daubert, Dkt. 102.

For the reasons discussed below, Plaintiff's motion *in limine* to preclude evidence or argument

regarding the value of the Property on any date other than the Vesting Date and its *Daubert*

motion to exclude that portion of Mr. Nakleh's opinion are GRANTED.[1]

## DISCUSSION

        The Court assumes the parties' familiarity with the factual background of this matter,

which is set forth in the parties' joint stipulations of fact in the joint pretrial order.  JPTO, Dkt.

118 at 5–10.  As relevant to this motion, on August 16, 2021, Plaintiff National Railroad

---

[1]        On November 27, 2023, the Court informed the parties that it would defer ruling on Plaintiff's *Daubert*
motions until trial.  Order, Dkt. 130.  Upon *sua sponte* reconsideration, the Court determined that Plaintiff's *Daubert*
motion directed to Mr. Nakleh and its related motion *in limine* could efficiently be resolved in advance of trial.

Passenger Corporation ("Amtrak") acquired the Property located at approximately 260 Twelfth Avenue, New York, NY, 10001, using its powers of eminent domain pursuant to 49 U.S.C. § 24311(a)(1).  *Id*. at 6–7.

The parties dispute whether the calculation of just compensation should consider the effect of the COVID-19 pandemic on the New York real estate market as of the Vesting Date. *Id*. at 2–4.  Amtrak urges the Court to restrict its analysis to the market value on the Vesting Date, Amtrak MIL at 1, while Defendants ("260 Twelfth Avenue") contend that just compensation requires valuing the Property excluding the effect of the pandemic on market value, 260 MIL Opp., Dkt. 137 at 1.

## I.      Legal Standard

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Even if evidence is relevant, the Court may exclude it under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by" the risk that it will confuse the issues, cause undue delay, or waste time.  Regardless of "whether the matter is to be tried to a jury or to a judge," Rule 403 "has a role to play."  *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 629336, at *8 (S.D.N.Y. Feb. 13, 2015) (citing *United States Co. v. M.V. Isla Plasa*, 1994 WL 114825, at *1 n.2 (S.D.N.Y. Mar. 31, 1994) (Sotomayor, J.)).

## II.     Evidence of the Property's Value Other Than On the Vesting Date Is Irrelevant

Because both federal and state law require the Court to base its award of just compensation of the Property's market value on the Vesting Date, evidence of its value on any other date is irrelevant, and any minimal relevance is substantially outweighed by the risk of wasting time and delay.

### A.  Federal Law Values the Property at the Time of the Taking

The Fifth Amendment to the United States Constitution precludes the taking of private property "without just compensation."  Accordingly, the Court must determine an amount of compensation that is "'just' both to an owner whose property is taken and to the public that must" foot the bill.  *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 (1950).

It is black letter law that just compensation is "what a willing buyer would pay in cash to a willing seller at the time of the taking."  *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (quotation omitted).  The Supreme Court "has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking."  *Horne v. Dep't of Agric.*, 576 U.S. 350, 369 (2015) (cleaned up).  Although "exceptional circumstances" may warrant deviation from this "general constitutional rule," *Commodities Trading Corp.*, 339 U.S. at 126, no such exceptional circumstance is present here.[2]

Courts look beyond market value at the time of taking to measure just compensation "only 'when market value is too difficult to find, or when its application would result in manifest injustice to owner or public.'"  *Kirby Forest Indus., Inc.*, 467 U.S. at 10 n.14 (quoting *Commodities Trading Corp.*, 339 U.S. at 123) (alterations omitted).  260 Twelfth Avenue does not suggest that market value was unascertainable on the Vesting Date;[3] rather, it asserts that

---

[2]     The Court acknowledges that the COVID-19 pandemic was, in a lay sense, an exceptional circumstance in the life of New York City, New York State, the United States, and the world.  But it was not, in a legal sense, an "exceptional circumstance" relative to determining the market value of a piece of property in New York City.

[3]     Both parties' experts were able to formulate an opinion of the market value of the Property on the Vesting Date.  *See, e.g.*, Nakleh Rep., Dkt. 92 Ex. 1 at 6; Sciannameo Rep., Dkt. 107 at 1.  Although they reached radically different values based on very different comparables, both parties' experts were able to arrive at a market value using well-established real estate appraisal techniques.

Because market value can be (and has been) ascertained in this case, the Great Depression-era cases relied on by 260 Twelfth Avenue are inapposite.  *See infra*, Section II.B.  Similarly, *Dore v. United States*, 97 F. Supp. 239 (Ct. Cl. 1951), was a wartime case in which the challenge was determining just compensation in the absence of a free market, *id.* at 244–46.  Whatever the impact of the pandemic, on the Vesting Date there was a free market for real estate in New York City.

valuing the property at a time when the pandemic had lowered the value of real estate in New York City unjustly permits Amtrak to "lock[] in a discount to the value of the Property based on the COVID-19 Pandemic at the property owner's expense."[4]  260 MIL Opp. at 1 (cleaned up).

The risk of "manifest injustice" warrants deviating from the market value on the Vesting Date only when the owner has "sustained the burden of proving special conditions and hardships peculiarly applicable to it."[5]  *Commodities Trading Corp.*, 339 U.S. at 128 (holding that federally-established price caps on pepper provided a fair measure of just compensation). Although the New York real estate market undoubtedly experienced shocks from the pandemic, *see* Amtrak Pretrial Mem., Dkt. 123 at 7 (acknowledging the pandemic's "significant effect" on the Manhattan real estate market), 260 Twelfth Avenue has not shown that it carried "an unfair and disproportionate burden" of the pandemic's effects,[6] *Commodities Trading Corp.*, 339 U.S. at 129.

Market value is "the price at which [property] would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."  *In re September 11 Litig.*, 802 F.3d 314, 335 (2d Cir.

---

[4]      260 Twelfth Avenue does not suggest that Amtrak acted beyond the limits of its statutory authority in taking the Property when it did.

[5]      Similarly, courts depart from market value on the day of vesting if market value reflects pricing distortions specific to the identity of the taker, the property owner, or the property.  *See United States v. Cors*, 337 U.S. 325, 332–33 (1949) (awarding below-market compensation for the taking of steam tugs because market value was inflated by the United States' need for tugs during wartime); *Horne v. Dep't of Agriculture*, 576 U.S. 350, 372 (2015) (Breyer, J., concurring in part) (noting that courts should adjust the just compensation award for any additional value created to or lost by the owner through the taking); *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 n.15 (1984) (noting that just compensation need not include the property's "special value to its owner"); *Mathias v. Jacobs*, 238 F. Supp. 2d 556, 576 (S.D.N.Y. 2002) (looking beyond market value of a company's shares because the company's fraud had inflated share price) (collecting cases).

[6]      Marc Nakleh, 260 Twelfth Avenue's expert, estimated that the pandemic decreased prices in the New York real estate market by 11%, and applied that same 11% factor when formulating his opinion of the market value of the Property on the Vesting Date.  *See, e.g.*, Nakleh Rep. at 130.

2015) (quoting *United States v. Cartwright*, 411 U.S. 546, 551 (1973)) (cleaned up).  The COVID-19 pandemic is clearly a "relevant fact" that a willing seller and willing buyer would consider in an efficient market that adjusts for all major events.  Sometimes the market overcorrects; sometimes it undercorrects.  No one knows for sure whether the market has over-corrected or under-corrected for any given event until time passes.  In any event, the public owes property owners no duty to insulate them from global forces, and 260 Twelfth Avenue suffers no manifest injustice by being subject to them.

### B.  State Law Values the Property at the Time of the Taking

Application of New York state law yields the same result.[7]  260 Twelfth Avenue relies primarily on Great Depression-era cases, which concerned the difficult task of determining property value under "the unique economic conditions that prevailed during the Great Depression."  *See Mathias v. Jacobs*, 238 F. Supp. 2d 556, 576 (S.D.N.Y. 2002) (discussing *In re Board of Water Supply*, 14 N.E.2d 789 (N.Y. 1938)).[8]  Those cases are inapposite because, unlike in the Great Depression, the New York real estate market did not completely collapse during the pandemic, and market value at the time of taking is ascertainable.[9]  Nor has the New York state legislature enacted a statute instructing courts to depart from the general rule that

---

[7]     The Court reserves ruling on the question of whether state or federal law governs the determination of just compensation in this matter.

[8]     The few cases cited by 260 Twelfth Avenue not from the Great Depression are also inapposite.  In *Port Authority Trans-Hudson Corp. v. Hudson Rapid Tubes Corp.*, 231 N.E.2d 734 (N.Y. 1967), which involved the taking of private rail tunnels for public operation, the Court of Appeals considered the owner's development costs in valuing "an essential public facility" already in existence, *id*. at 736, 739; 260 Twelfth Avenue does not claim to have invested in Amtrak's proposed rail tunnel.

In *United States v. Inlot*, 26 F. Cas. 490, 494–95 (S.D. Ohio 1873), *aff'd sub nom. Kohl v. United States*, 91 U.S. 367 (1875), although the court acknowledged that "language of the law" required that just compensation be awarded with reference to the property's value at the time of the taking, the parties had agreed that valuation should be made with reference to the property's market value several months prior to the vesting date.  *Id*. at 494.

[9]     *See supra* note 3.

market value provides a fair measure of just compensation, in contrast to what it did during the Great Depression.  *See Heiman v. Bishop*, 272 N.E.2d 83, 85–86 (N.Y. 1936) (discussing Civil Practice Act § 1083-a).

*In re Board of Water Supply* reiterated the basic principle that "fair market value is not established by sales where prices offered are so small that only sellers forced to sell will accept them."  14 N.E.2d at 792.  That case reflects a narrow carve-out to the general rule that market value provides a fair measure of just compensation: when market price reflects "panic value, auction value, speculative value, [or] a value fixed by depressed or inflated prices," such that the market lacks both "willing buyers and sellers in substantial numbers," courts must look beyond market value at the time of taking to ascertain just compensation.  *Id*.  Mere market contractions, like those experienced during the pandemic, that reduce the number of competitive buyers but do not destroy the existence of a functioning real estate market, do not trigger special rules for valuation.  *See id*. ("The mere absence of competitive buyers does not establish lack of a real market.").

### III. Amtrak's *Daubert* Motion to Exclude Part of Mr. Nakleh's Opinion Is Granted

Amtrak also moves to exclude the portion of Marc Nakleh's opinion that relates to the value of the Property on a date other than the Vesting Date.  Dkt. 102.

Federal Rule of Evidence 702 permits an expert witness to testify if "it is more likely than not" that the expert's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue."  In applying Rule 702, "the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002); *see also Joffe v. King & Spalding LLC*, 2019

WL 4673554, at *3 n.2 (S.D.N.Y. Sept. 24, 2019) ("At a minimum, the specialized knowledge being proffered must be relevant to the factual disputes in the case.").

Because the Court finds that evidence regarding the Property's value on a date other than the Vesting Date is irrelevant, *see supra*, expert testimony regarding the same is inadmissible pursuant to Federal Rule of Evidence 702.  Accordingly, Amtrak's *Daubert* motion directed toward the portions of Mr. Nakleh's opinion relating to the value of the Property on a date other than the Vesting Date is granted.

## CONCLUSION

For the foregoing reasons, Amtrak's motion *in limine* to exclude evidence, testimony, or argument concerning the Property's value on any date other than the Vesting Date, and its *Daubert* motion directed to Mr. Nakleh opinion regarding the same, are GRANTED.

Not later than **February 5, 2024**, the parties must submit a joint letter stating which issues raised in Amtrak's motion *in limine* remain live in light of this ruling.  By **February 2, 2024**, 260 Twelfth Avenue must also submit an exhibit list that complies with the specifications of Rule 8.E of the Undersigned's Individual Practices in Civil Cases.

**SO ORDERED.**

Date:  February 1, 2024                          _____
     New York, NY                          **VALERIE CAPRONI**
                                                   **United States District Judge**